IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

BRANDY MARIE ROBINSON                                                                    PLAINTIFF

V.                          Case No. 4:24-CV-00163-KGB-BBM

MARTIN O'MALLEY, Commissioner,
Social Security Administration                                                           DEFENDANT

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Chief Judge Baker may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

I.     **INTRODUCTION**

On December 30, 2019, Plaintiff Brandy Marie Robinson ("Robinson") filed a Title II application for disability and disability insurance benefits. (Tr. at 14). On the same day, she filed a Title XVI application for supplemental security income. *Id*. In the applications, she alleged disability beginning on March 31, 2019. *Id*. The applications were denied initially and on reconsideration. *Id*.

After conducting a hearing, an Administrative Law Judge ("ALJ") denied

Robinson's application by written decision, dated April 4, 2023. (Tr. at 14–25). The Appeals Council denied Robinson's request for review of the ALJ's decision on December 29, 2023. (Tr. at 1–6). The ALJ's decision now stands as the final decision of the Commissioner, and Robinson has requested judicial review. For the reasons stated below, the Court recommends that the decision of the Commissioner be affirmed.

## II.     THE COMMISSIONER'S DECISION

Robinson was 28 years old on the alleged onset date of disability, and she has a high school education. (Tr. at 24). She meets the insured status requirements of the Social Security Act through March 31, 2019. (Tr. at 17). The ALJ found that Robinson has not engaged in substantial gainful activity since March 31, 2019, the alleged onset date.[1] *Id*. At Step Two, the ALJ determined that Robinson has the following severe impairments: HIV, lumbar and cervical degenerative changes, status-post L1 transverse fracture, anxiety, bipolar disorder, post-traumatic stress disorder ("PTSD"), depression, schizophrenia, substance abuse disorder, and migraine headache. *Id*.

At Step Three, the ALJ determined that Robinson's impairments did not meet or

---

[1] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g) (2017), 416.920(a)–(g) (2017).

equal a Listing.[2] (Tr. at 17–18). The ALJ then determined that Robinson had the residual functional capacity ("RFC") to perform work at the light exertional level, with the following restrictions: (1) can occasionally climb, balance, stoop, kneel, crouch, and crawl; (2) cannot constantly use, but can frequently use, the upper extremities to reach, handle, finger, and feel; (3) is limited to simple, repetitive work; (4) is limited to making simple work-related decisions; and (5) can have occasional interaction with supervisors, coworkers, and the public. (Tr. at 19).

At Step Four, the ALJ found that Robinson has no past relevant work. (Tr. at 23). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found, based on Robinson's age, education, work experience, and RFC, that there are jobs in the national economy that Robinson can perform. (Tr. at 23–25). Therefore, the ALJ concluded that Robinson was not disabled from the alleged onset date through the date of the decision. *Id.*

## III. DISCUSSION

### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is "supported by substantial evidence on the record as a whole and whether it is based on legal error." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42

---

[2] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926 (2017)). The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id.*

U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B.   **Robinson's Arguments on Appeal**

Robinson contends that the evidence supporting the ALJ's decision is less than substantial. Specifically, Robinson argues that (1) the ALJ erred in his analysis at Step Three because she has a digestive disorder that met or equaled Listing § 5.08, and (2) the ALJ did not properly evaluate the medical source evidence. (Doc. 8 at 7–11). The Court will address each argument, in turn.

### 1. Robinson's Impairments Did Not Meet or Equal a Listed Impairment.

Robinson suffers from a variety of impairments, which the ALJ listed in his decision. Robinson contends on appeal that the ALJ erred at Step Three by failing to discuss whether her digestive disorder met or equaled Listing § 5.08. (Doc. 8 at 7). Robinson contends, "[i]t is error for the ALJ not to identify and analyze the appropriate listing." *Id*. at 8. At Step Three, however, the burden rests squarely on the claimant to prove she met a Listing. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). In particular, the claimant must show that her impairment matches all of the specified medical criteria of a listing. *Johnston v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

Listing 5.08 for digestive disorders requires proving "weight loss due to any digestive disorder, despite adherence to prescribed medical treatment, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 12-month period." 20 C.F.R. Pt. 404. Subpt, P, App. 1, § 5.08. Robinson fails to show that she met this Listing's criteria.

First, Robinson did not allege a digestive disorder on her application for benefits. (Tr. at 322). In support of her argument that she met the Listing, she cites to BMI readings of 16.8 on June 13, 2017, (Tr. 1594–1596), and 16.6 on January 3, 2018, (Tr. 1589–1592). This evidence, however, predates the alleged onset date of disability, March 31, 2019, by over a year. (Tr. 17). BMI readings from before the relevant time period are not probative in determining if Listing 5.08 has been met. *See Joplin v. Colvin*, No. 6:15-03204-DGK-SSA, 2016 WL 4744170 at *3 (W.D. Mo. Sept. 12, 2016) (holding that BMI readings are

only relevant if they overlap with the eligibility period). More importantly, when her doctors prescribed meal supplements and probiotics, Robinson gained weight. *Compare* (Tr. 1039) (118 pounds on June 25, 2019) *with* (Tr. 1052) (108 pounds on April 25, 2019). Furthermore, Robinson had BMI readings of 17.50 or greater during the relevant time-period. (Tr. at 879–880, 922, 958–964, 986, 1001, 1039, 1198, 1235, 1275). Moreover, the record does not support a finding that Robinson continued to lose weight, in spite of treatment, as is required to meet or equal Listing 5.08. Accordingly, Robinson has not shown that she has a digestive disorder that met or equaled all of the criteria of Listing 5.08. The Court finds no error in the ALJ's analysis at Step Three.

### 2. Medical opinion evidence

Robinson claims that the ALJ failed to evaluate properly medical and psychological opinion evidence. In particular, Robinson challenges the ALJ's evaluation of the opinions of psychological consultative examiner, John Faucett, Ph.D., and state agency medical reviewers. (Doc. 8 at 8–11). With regard to her mental impairments, Robinson was diagnosed with anxiety, PTSD, depression, bipolar disorder, and schizophrenia, and she received treatment sporadically. (Tr. 17, 21). Robinson alleges that the treatment was irregular because she lacks reliable transportation. *Id.* at 21. She said she had anger, flashbacks, paranoia, and trouble getting along with people, (Tr. at 337–369, 966–967), and she lost interest in social activities, *id.* at 362.

John Faucett, Ph.D., performed a consultative examination of Robinson in July 2020. (Tr. at 966–970). He diagnosed her with Unspecified Bipolar and Related Disorder and noted that past illicit drug use "complicated her diagnostic picture." (Tr. at 969). Dr.

Faucett also noted, however, that Robinson reported the ability to perform daily household chores and manage personal finances. (Tr. at 970). He said that, based on his interview and examination, she could communicate in an intelligible and effective manner but would have difficulty getting along with others. *Id*. Dr. Faucett wrote that Robinson had the cognitive capacity to perform basic work-like tasks. *Id*. She could sustain concentration and had sufficient persistence in completing tasks. *Id*. She could perform tasks within an acceptable timeframe. *Id.* Dr. Faucett had no "collateral information" and based his review on Robinson's subjective reports and the clinical examination. (Tr. at 966).

ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. §§ 404.1520c(a)–(c) (2017); 416.920c(a)–(c) (2017). An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1–2); 20 C.F.R. § 416.920c(c)(1–2); *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021); *Bonnett v Kijakazi*, 859 F. App'x 19 (8th Cir. 2021) (per curiam). An ALJ must give good reasons for his findings about an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a)–(c); 416.920c(a)–(c).

In this case, the ALJ found that the opinions of Dr. Faucett were generally persuasive. (Tr. at 23). He reasoned that the opinion expressing Robinson's RFC for simple work was supported by Dr. Faucett's commentary and consistent with the mental status

7

exams over the relevant time-period, which showed fatigue, depression, anxiety, and irritability. *Id*. The ALJ found unpersuasive Dr. Faucett's "vague conclusion" that Robinson has difficulty getting along with others because it was based heavily on her subjective reports. *Id.* The ALJ gave more weight to the "objective details and chronology of the record, which more accurately describes the claimant's impairments and limitations." *Id*.

Robinson argues that the ALJ did not properly explain why he believed Robinson's self-reports to be vague or why he disagreed with Dr. Faucett. (Doc. 8 at 9–10). But an ALJ may certainly find some parts of an opinion persuasive where others are not, if he gives good reasons for so doing. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("[T]he ALJ acted properly in disregarding those portions of [the expert's] report that were based on [Plaintiff]'s subjective descriptions to him of her pain levels."). In this case, the ALJ specifically addressed the consistency and supportability of Dr. Faucett's opinion, as is required. (Tr. 22–23). Also, the ALJ credited Robinson's allegations that she had difficulty interacting with others because the RFC limits her with respect to occasional interaction with supervisors, coworkers, and the public; the ALJ incorporated the whole record for his RFC finding, and he did not rely solely on Dr. Faucett's report. (Tr. at 19). Thus, the Court finds that the ALJ evaluated Dr. Faucett's opinions in accordance with applicable law, and his analysis is supported by substantial evidence in the record as a whole.

Robinson next contends that the ALJ erred in his evaluation of state-agency medical opinions. A state-agency medical consultant reviewed the records on July 13, 2020, and

concluded that Robinson's HIV was only a mild impairment. (Tr. at 82–83). The ALJ found this opinion unpersuasive because it was inconsistent with evidence acquired later that showed physical impairments. (Tr. at 22). Indeed, the record as a whole was more aligned with the opinion of the second reviewing medical consultant, who found Robinson capable of light work as of December 2020. (Tr. at 119–126). The ALJ found that opinion generally persuasive because of physical exams showing fatigue, nausea, headaches, and tenderness to palpation. (Tr. at 22). The ALJ found these symptoms consistent with the opinion of Antedra Smith, the vocational consultant, that Robinson could perform light work and found that the opinion was supported by record evidence of chronic pain. *Id*. The Court acknowledges, and Robinson points out, that the ALJ cited to the wrong pages in the record for some of Robinson's symptoms, but his conclusions were, nonetheless, well-supported. (Doc. 10 at 13). In sum, the ALJ sufficiently explained his evaluation of the medical opinion evidence, and the RFC appropriately reflected the credible findings.

## IV.  CONCLUSION

For the reasons stated herein, there is substantial evidence in the record as a whole to support the Commissioner's decision that Robinson was not disabled.

IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's decision be AFFIRMED.

2. Judgment be entered for the Defendant.

DATED this 26th day of December, 2024.

*Benecia Moore*
UNITED STATES MAGISTRATE JUDGE